IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORVILLE MEAUX,

    Plaintiff,

  v.

NORTHWEST AIRLINES, INC.,

    Defendant.
_____/

No. C 04-04444 CW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this employment discrimination case, Plaintiff Orville Meaux sues Defendant Northwest Airlines, Inc. for race discrimination. Defendant has filed a motion for summary judgment arguing that Plaintiff's claims are not supported by admissible evidence. Defendant asserts that the disciplinary measures taken against Plaintiff were supported by legitimate non-discriminatory reasons. Plaintiff opposes the motion. Having considered all of the papers filed by the parties the Court grants Defendant's motion in part and denies it in part.

## BACKGROUND

In 1977, Plaintiff, an African-American male, began employment as a flight attendant with Hughes Airwest in Minnesota. In 1980, Hughes Airwest was bought by Republic Airlines, which was later purchased by Northwest in 1986. While working for Republic in the

1980s, Plaintiff was disciplined several times.  In 1986, Plaintiff reported to the Minnesota Department of Human Rights that his discipline was the result of Republic's racially discriminatory practice.  The Department of Human Rights determined that "probable cause exist[ed] to credit the allegation that an unfair discriminatory practice ha[d] been committed."  Meaux Decl., Exh. C.  The parties have not presented evidence pertaining to that discrimination claim.  Further, it is not clear what, if anything, resulted from the Department's finding.

In 1988, Plaintiff filed a suit in state court in Minnesota, alleging incidents of race discrimination, which are presumably the same as those of which he complained to the Department of Human Rights.  Id., Exh. D.  Plaintiff claimed that, in one incident, the "Base Administrator,"[1] disciplined him for attempting to pass security without proper identification. Meaux Decl., Exh. D.  In the present lawsuit, Plaintiff claims that the Base Administrator was Eric Edmunson; however, Edmunson was not named in the 1988 complaint.  Id.  The 1988 case was resolved pursuant to a confidential settlement agreement.  Although Plaintiff alleges that the agreement provided that he would "not be required to work under Mr. Edmunson's management," First Amended Complaint (FAC) ¶ 14, the agreement contains no such provision.  Goldman Decl., Exh. D.

After the lawsuit settled, Plaintiff transferred from Minnesota to Los Angeles and continued to work for Northwest.  In 2001, Plaintiff transferred to Northwest's San Francisco operation

---

[1] The parties do not define "Base Administrator," but the Court assumes it refers to some sort of manager with authority to issue disciplinary measures.

2

and held the position of purser. Pursers are experienced flight attendants who preside over in-flight cabin operations and serve as a resource to other attendants. At the time Plaintiff transferred, Edmunson was Northwest's Operations Manager for San Francisco. Dena Rasmussen was a flight attendant manager and Plaintiff's direct supervisor. Rasmussen reported to Edmunson. Edmunson and Rasmussen claim to have no knowledge of the 1988 lawsuit. Edmunson Decl. ¶¶ 22-24; Rasmussen Decl. ¶ 18.

On November 1, 2001, Plaintiff's first day of work in San Francisco, he attempted to pass through security with outdated identification. He was allegedly uncooperative during the screening process and the screeners reported this incident to Edmunson. Edmunson Decl. ¶ 8, Exh. D. Plaintiff alleges that Edmunson was present and observed Plaintiff's conduct personally but did nothing to intervene on his behalf. Meaux Decl. ¶ 8. Plaintiff states that he did not think that the screeners' alleged mistreatment had anything to do with his race. Exh. A at 226-27. No formal discipline resulted from this event. However, Plaintiff was concerned that this incident was the result of Edmunson inappropriately targeting him in retaliation for the 1988 lawsuit. On December 1, 2001, Plaintiff wrote a letter to Edmunson and the Director of Labor Relations stating as much. Meaux Decl. Exh. E. Edmunson denies that he ever received the letter.

The events central to this case occurred on August 2, 2003. On that date, Plaintiff was the purser on a flight from San Francisco to Japan. A passenger allegedly acted rudely toward Plaintiff. Instead of politely asking for things, the passenger demanded them from Plaintiff. For instance, he allegedly said,

3

"hang my coat now," and "take this, take this now" referring to his meal tray. Edmunson Decl., Exh. I at 64-67. Toward the end of the flight, the passenger told Plaintiff to "get my coat now" and Plaintiff responded by asking, "What's the magic word?" Id. at 67. Upset with Plaintiff's question, the passenger nonetheless responded, "please," but then told Plaintiff that he would report this incident to Plaintiff's manager. Id. Plaintiff asked the passenger for his name and the name of his employer and supervisor. When the passenger refused to provide this information, Plaintiff presented him with a Notice of Violation card. That card is issued to passengers whose conduct may be in violation of federal law. Flight attendants give these cards to passengers as a warning before notifying federal authorities of a violation. After receiving the card, the passenger threatened to contact his lawyer. Once the passenger disembarked the aircraft, he spoke with a Northwest gate agent about the incident.

On September 1, 2003, Edmunson wrote the passenger a letter of apology. He stated, "I was very sorry to hear that you were displeased with the service that Purser Orville Meaux provided you, specifically the embarrassment you were subject to. Please accept my sincere apologies." Schmidt Decl., Exh. F. Edmunson then wrote, "While I cannot disclose the details of disciplinary actions taken against the Purser, you can be assured that I am addressing your concerns directly with the crew members." Id.

Rasmussen, Plaintiff's immediate supervisor, investigated the incident. Before she interviewed Plaintiff, she discussed the situation with Edmunson. On September 29, 2003, after interviewing Plaintiff, Rasmussen determined that the passenger was not in

violation of any Federal Aviation Regulation nor was his conduct disruptive according to Northwest guidelines for disruptive behavior. Northwest defines disruptive behavior as "disorderly conduct, verbal abuse, harassment and irrational behavior." Northwest notes, "Rude behavior is not considered disruptive." Rasmussen Decl., Exhs. C, K. Rasmussen concluded that Plaintiff erred by issuing the Notice of Violation card and she issued him a "Level I Reminder," the lowest level of formal discipline. Id., Exh. K. Plaintiff was no longer able to serve as a purser.

The same day that Plaintiff received the Level I Reminder, he wrote a letter to the passenger's employer. He stated, "My management required that I explain what and why I did concerning his behavior that took place during that flight on August 2, 2003, also for me to explain why your employee is suing Northwest Airlines." Edmunson Decl., Exh. I. He noted that the passenger's "behavior on this flight was very unruly at best, one that I hope is not common to any of your other employees." He continued, "Because of his behavior, I lost my position as a purser." Id. He also wrote that, if the passenger "would repeat this type of behavior on another flight or airline, it might not turn out well for him. I really don't believe he knows the seriousness of his actions." Id. Along with the letter, Plaintiff enclosed an eighteen-page memo, which detailed his version of the August 2 incident. The memo was addressed to Rasmussen and indicated that it was copied to Edmunson and three other Northwest officials. In actuality, Plaintiff never sent the letter or the memo to any of these individuals. Although the letter was dated September 29, 2003, Plaintiff claims that he sent the letter to the passenger's

5

employer on October 23, 2003. Meaux Decl. ¶ 40.

Plaintiff states that, on October 9, 2003, he asked Ms. Rasmussen for a copy of the passenger's complaint. Rasmussen gave Plaintiff a copy of the complaint and allegedly told him, "You know you have the right, you could write this passenger's employer and let them know of his behavior." Id. at ¶ 38. Rasmussen claims that "at no point in time . . . did I tell Mr. Meaux or say words to the effect that he could or should write to the passenger or the passenger's employer with respect to the passenger's conduct during the August 2, 2003 flight." Rasmussen Decl. ¶ 13.

Northwest claims to have no knowledge about the letter until the passenger contacted Northwest in November, 2003. The passenger complained that he was concerned for his safety and threatened to file a lawsuit. Plaintiff then gave Northwest a copy of the letter and, on December 7, 2003, Edmunson suspended Plaintiff with pay pending further investigation. Over the next several weeks, Edmunson investigated the incident further, including holding two question and answer sessions with Plaintiff and his union representative. Rasmussen did not participate in the investigation or this disciplinary action because she was pregnant. Rasmussen Decl. ¶ 15. At the conclusion of the investigation, Edmunson determined that Plaintiff should be fired. On January, 26, 2004, Northwest sent Plaintiff a letter notifying him that he was being fired for violating several of the Rules of Conduct for Employees of Northwest Airlines, including Rule 1, failing to use good judgment and common sense, and Rule 30, engaging in conduct detrimental to Northwest.

Plaintiff grieved his Level I warning and termination to a

System Board for Adjustments. The matter was arbitrated by a three member panel, which included a union arbitrator, a company arbitrator and a neutral arbitrator. The panel conducted a three-day hearing between June 25 and June 27, 2008. After the hearing, during which Plaintiff presented evidence and cross-examined witnesses, the panel concluded that there was just cause for Plaintiff's Level I discipline and termination.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

DISCUSSION

I. Discrimination Claims

Defendant moves for summary adjudication of Plaintiff's claims for violation of Title VII of the 1964 Civil Rights Act and California's Fair Employment and Housing Act, on the grounds that Plaintiff (1) offered no evidence suggesting that Defendant acted with a discriminatory motive and (2) failed to rebut Defendant's legitimate, non-discriminatory reasons for disciplining and terminating him.

A. Applicable Law

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), the Supreme Court established a burden-shifting framework for evaluating the sufficiency of a plaintiff's evidence in employment discrimination suits. The same burden-shifting framework is used when analyzing claims under FEHA. Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996). Within this framework, plaintiffs may establish a prima facie case of discrimination by reference to circumstantial evidence; to do so, plaintiffs must show that they are members of a protected class; that they were qualified for the position they held or sought; that they were subjected to an adverse employment decision; and that they were replaced by someone who was not a member of the protected

9

class or that the circumstances of the decision otherwise raised an inference of discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (citing McDonnell Douglas and Burdine). Once a plaintiff establishes a prima facie case, a presumption of discriminatory intent arises. Id. To overcome this presumption, the defendant must come forward with a legitimate, non-discriminatory reason for the employment decision. Id. at 506-07. If the defendant provides that explanation, the presumption disappears and the plaintiff must satisfy his or her ultimate burden of persuasion that the defendant acted with discriminatory intent. Id. at 510-11.

In order to do so, the plaintiff must produce "specific, substantial evidence of pretext." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983). To survive summary judgment, the plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for discrimination. The plaintiff may rely on the same evidence used to establish a prima facie case or put forth additional evidence. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994). "[I]n those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact." Wallis, 26 F.3d at 890. "[T]he plaintiff 'must tender a genuine issue of material fact as to pretext in order to avoid summary judgment.'" Id. (quoting Steckl, 703 F.2d at 393). To do so, "the plaintiff need produce very little evidence of discriminatory motive to raise a

genuine issue of fact." Lindahl v. Air France, 930 F.2d 1434, 1438 (9th Cir. 1991). "'[S]tray' remarks are insufficient to establish discrimination." Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990).

The Ninth Circuit has instructed that district courts must be cautious in granting summary judgment for employers on discrimination claims. See Lam v. University of Hawai'i, 40 F.3d 1551, 1564 (9th Cir. 1994) ("'We require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry"-- one that is most appropriately conducted by the factfinder'") (quoting Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir. 1991)).

B. Analysis

1. Level I Reminder

Plaintiff argues that he has shown sufficient circumstantial evidence related to Defendant's decision to issue him a Level I Reminder in response to his conduct on August 2, 2003 to raise an inference of discrimination. Flight attendants are given considerable discretion when deciding whether to issue a Notice of Violation Card. While they are not to be issued in response to rude behavior, they may be issued to address verbal abuse and harassment. The line between rude behavior and verbal abuse and harassment is not a bright one. Therefore, supervisors must exercise considerable discretion when deciding whether to discipline a flight attendant for improperly issuing a Notice of Violation Card.

To support the inference of discrimination, Plaintiff relies

on two racial comments that Rasmussen allegedly made at some point during "the early 2000s." Velez Decl., ¶ 7.[2] One of Plaintiff's co-workers, Jesse Velez, claims that he overheard a conversation between Rasmussen, who is Causasian, and another flight attendant, who is also Caucasian, in which Rasmussen jokingly referred to African Americans as "coons" and "gorillas." Id. ¶¶ 7-8. Comments that overtly exhibit hostility to a protected class, even if they are general comments about the class, or are directed to other people, are probative of discriminatory intent. Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1038 (9th Cir. 2005). "Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision." Id. In addition, the person exhibiting discriminatory animus need only be one of the people who participated in, or influenced, the decisionmaking process and the plaintiff need not show that this person communicated his bias to the other decisionmakers. Id. at 1039-40. Plaintiff's direct evidence of racial animus by his supervisor, who made the decision to issue the Level I Reminder,

---

[2] Defendant objects to several of the declarations Plaintiff submitted to oppose the summary judgment motion. First, Defendant objects to Plaintiff's use of the testimony taken during a previous arbitration. However, these statements were taken under oath and are admissible under Federal Rule of Civil Procedure 56(e) as affidavits. See Curnow v. Ridgecrest Police, 952 F.2d 321, 324 (9th Cir. 1991). Second, Defendant objects to Velez's declaration because it is "vague, speculative and unintelligible." Reply at 3. It is not. Third, the portions of Jones' declaration to which Defendant objects were not relied upon by the Court. As to the remainder of Defendant's objections, to the extent that the Court relied upon evidence to which Defendant objected, the objections are overruled. The Court did not rely on any inadmissible evidence in reaching its decision. To the extent the Court did not rely on evidence to which Defendant objected, the objections are overruled as moot.

12

establishes a prima facie case of discrimination in the issuance of that discipline.

Defendant has submitted sufficient evidence that its decision to issue Plaintiff a Level I Reminder was based on legitimate, non-discriminatory reasons. Therefore, the burden shifts back to Plaintiff to show that Defendant's proffered reasons for the employment action are a pretext for race discrimination.

Plaintiff argues that Defendant's investigation of Plaintiff's issuance of the Notice of Violation Card was conducted in bad faith. Plaintiff points to the fact that Edmunson sent the passenger a letter of apology before Plaintiff's discipline was determined. However, this letter was a standard customer service apology sent to complaining passengers. There is no evidence that this letter was related to the decision to issue Plaintiff a Level I reminder. Further, Rasmussen, not Edmunson, was in charge of the investigation and made the decision to issue the Level I Reminder. Plaintiff has shown that Rasmussen had ample discretion in the discipline process and that there are disputes of fact as to what occurred on the August, 2003 flight and whether Plaintiff's conduct warranted a Level I Reminder. In conjunction with the direct evidence of racial animus discussed above and, drawing all reasonable inferences in Plaintiff's favor, the Court finds that there is a material issue of fact as to whether Defendant's legitimate reasons for issuing the Level I Reminder were pretextual. Accordingly, the Court denies Defendant's summary judgment motion on this claim.

2. Termination

Plaintiff argues that he has submitted sufficient

13

circumstantial evidence related to Defendant's decision to terminate him for writing the passenger's employer a letter after the August 2 incident to raise an inference of discrimination. Plaintiff alleges that Rasmussen told him that he had the right to write to the passenger's employer about the passenger's behavior. Further, Plaintiff presents evidence that, on separate occasions, Rasmussen told other flight attendants to write letters directly to passengers and their employers in response to on-flight incidents. Velez Decl. ¶¶ 5-6; Jones Decl. ¶ 10. Defendant responds that, even if Rasmussen authorized Plaintiff to write a letter, she did not authorize Plaintiff to write the type of letter that he did, one which contradicted Northwest's findings and insulted and threatened the passenger. Further, nobody at Northwest read or approved the contents of the letter before Plaintiff sent it to the passenger's employer. However, making all inferences in favor of the non-moving party, Plaintiff could have reasonably believed that he was entitled to write the passenger's employer to convey his version of the events.

To support an inference of discrimination, Plaintiff relies on the same two racial comments that Rasmussen allegedly made and evidence that Rasmussen authorized him to write a letter to the passenger's employer. However, Rasmussen did not authorize Plaintiff to write the twenty-page threatening letter that he did. Moreover, Rasmussen was not involved in the termination decision.

Plaintiff also argues that he was treated differently than a similarly situated Caucasian flight attendant to whom the Court will refer as Doe. However, Plaintiff's and Doe's conduct are not comparable. While still onboard an aircraft, Doe wrote a passenger

14

a half-page note telling the passenger that "as a courtesy to the flight crew in the future it would be appreciated if you would not place your garbage in the aisle and point at it when your flight attendant comes by to pick up garbage. . . . I am not a walking garbage can." Schmidt Decl., Rasmussen Dep., Exh. 12. Doe did not threaten the passenger or write to his employer. When discussing the incident with his supervisor, Doe acknowledged fault, whereas Plaintiff failed to accept any responsibility for his conduct. Further, the same decisionmaker was not involved in Doe's and Plaintiff's discipline decision. Rasmussen issued Doe a Level I Reminder, whereas Edmunson terminated Plaintiff. Therefore, Plaintiff and Doe are not similarly situated for purposes of a disparate treatment discrimination analysis. In sum, Plaintiff has not presented evidence that the circumstances of his termination raise an inference of discrimination.

Even if Plaintiff had established a prima facie case of discrimination, Defendant has submitted sufficient evidence that its decision to terminate Plaintiff was based on legitimate, non-discriminatory reasons; and, for the same reasons that Plaintiff has not proven a prima facie case of discrimination, he has not carried his burden to show that the termination decision was pretextual. Therefore, the Court grants Defendant's summary judgment motion on this claim.

II. Retaliation Claim

Plaintiff alleges that Defendant retaliated against him after he engaged in protected activities, in violation of FEHA. Specifically, Plaintiff alleges that he engaged in the protected activities of filing a claim with the Minnesota Department of Human

15

Rights in 1986 and filing a lawsuit in 1988 against Northwest. He alleges that Defendant was aware of Plaintiff's activities and retaliated against him by issuing the Level I Reminder in September, 2003 and then by terminating him in January, 2004.

In order to establish a prima facie claim for retaliation under Title VII and FEHA, a plaintiff must show that (1) he engaged in protected activity, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000). Defendant argues that Plaintiff fails to establish the causal link between the protected activities and the adverse action. The Court agrees.

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). When temporal proximity is the only evidence of causality, the Supreme Court has held that the time between the two events must be "very close," and has cited with approval cases holding that a three-month or four-month period is insufficient alone to establish causation. See Clark Co. School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four-month period insufficient)).

Here, there is no evidence that Defendant's actions were

16

causally related to Plaintiff's protected activity.  Plaintiff presents no evidence that any decisionmaker in Plaintiff's 2003 and 2004 discipline had knowledge of his 1986 Department of Human Rights claim.  Therefore, no cause of action for retaliation can be based on this protected activity.

Regarding the 1988 lawsuit, Plaintiff alleges that, in December, 2001, he hand delivered a letter to Edmunson which stated that Plaintiff believed he was being targeted by Edmunson in retaliation for the earlier lawsuit.  Edmunson denies receiving the letter.  Even if Edmunson received the letter, the adverse employment actions taken in 2003 and 2004 are not close enough in time to the 1988 lawsuit or to the 2001 letter to support an inference that the adverse employment actions were causally related to the protected activity.  Therefore, the Court grants Defendant summary judgment on Plaintiff's retaliation claim.

III.  Harassment Claim

Defendant moves for summary adjudication of Plaintiff's hostile environment claims under FEHA and Title VII on the grounds that Plaintiff cannot demonstrate that the alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment.

A.  Applicable Law

In order to demonstrate the prima facie elements of a hostile work environment claim, a plaintiff must raise a triable issue of fact as to whether (1) the plaintiff was subjected to verbal or physical conduct because of protected characteristics; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment

17

and create an abusive working environment. <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 798 (9th Cir. 2003) (citing <u>Kang v. U. Lim Am., Inc.</u>, 296 F.3d 810, 817 (9th Cir. 2002)). A plaintiff must show that the work environment was abusive from both a subjective and an objective point of view. <u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22 (1993)). In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Nichols v. Azteca Rest. Enters.</u>, 256 F.3d 864, 872 (9th Cir. 2001) (citation omitted).

California courts look to federal Title VII decisions in applying FEHA to racial harassment claims. <u>Etter v. Veriflo</u>, 67 Cal. App. 4th 457, 464 (1999).

B.  Analysis

Plaintiff did not address Defendant's arguments that he has not provided any evidence of his harassment claim. The Court has reviewed the record and concludes that Defendant's alleged conduct was not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. <u>See</u> <u>Manatt</u>, 339 F.3d at 798. Therefore, the Court grants Defendant's motion for summary adjudication of Plaintiff's harassment claim.

IV.  Punitive Damages

Defendant argues that Plaintiff is not entitled to punitive damages because of the terms of Northwest's bankruptcy plan. Under the plan, claims for punitive damages are subordinated claims; and

the findings of fact in the bankruptcy confirmation order provide that the valuation of Northwest is insufficient to support a distribution to subordinated claims. Defendant argues that the bankruptcy plan and confirmation order do not allow for any award of punitive damages. Plaintiff did not respond to this argument.

Defendant also argues that Plaintiff has not presented any evidence to meet the standard for an award of punitive damages in this case. "An award of damages under Title VII is proper where the acts of discrimination giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights." Ngo v. Reno Hilton Resort Corp., 140 F.3d 1299, 1304 (9th Cir. 1998). The Court concludes that Plaintiff has not presented any evidence to support a punitive damages award. Although Plaintiff may proceed to trial on his discrimination claim for the Level I Reminder, the evidence pertaining to that discipline does not rise to the level of willful, egregious or reckless indifference to Plaintiff's federal rights. Therefore, the Court grants Defendant's motion for summary adjudication that punitive damages are not available.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment in part and denies it in part. Docket No. 66. The Court grants Defendant's motion with regard to Plaintiff's retaliation and harassment claims. The Court denies Defendant's motion with regard to Plaintiff's FEHA and Title VII race discrimination claims relating to his 2003 Level I Reminder, but grants Defendant's motion on those claims relating to his 2004 termination. Further, the Court grants Defendant's motion for

19

summary adjudication that Plaintiff is not entitled to seek punitive damages.

IT IS SO ORDERED.

Dated: 02/18/2010

_____
CLAUDIA WILKEN
United States District Judge