IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORVILLE MEAUX,

        Plaintiff,

  v.

NORTHWEST AIRLINES, INC.,

        Defendant.

_____/

No. C 04-04444 CW

ORDER GRANTING IN
PART AND DENYING IN
PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

In this employment discrimination case, Plaintiff Orville
Meaux sues Defendant Northwest Airlines, Inc. for race
discrimination.  Defendant has filed a motion for summary judgment
arguing that Plaintiff's claims are not supported by admissible
evidence.  Defendant asserts that the disciplinary measures taken
against Plaintiff were supported by legitimate non-discriminatory
reasons.  Plaintiff opposes the motion.  Having considered all of
the papers filed by the parties the Court grants Defendant's motion
in part and denies it in part.

BACKGROUND

In 1977, Plaintiff, an African-American male, began employment
as a flight attendant with Hughes Airwest in Minnesota.  In 1980,
Hughes Airwest was bought by Republic Airlines, which was later
purchased by Northwest in 1986.  While working for Republic in the

**United States District Court**
For the Northern District of California

1   1980s, Plaintiff was disciplined several times.  In 1986, Plaintiff

2   reported to the Minnesota Department of Human Rights that his

3   discipline was the result of Republic's racially discriminatory

4   practice.  The Department of Human Rights determined that "probable

5   cause exist[ed] to credit the allegation that an unfair

6   discriminatory practice ha[d] been committed."  Meaux Decl., Exh.

7   C.  The parties have not presented evidence pertaining to that

8   discrimination claim.  Further, it is not clear what, if anything,

9   resulted from the Department's finding.

10       In 1988, Plaintiff filed a suit in state court in Minnesota,

11  alleging incidents of race discrimination, which are presumably the

12  same as those of which he complained to the Department of Human

13  Rights.  <u>Id.</u>, Exh. D.  Plaintiff claimed that, in one incident, the

14  "Base Administrator,"[1] disciplined him for attempting to pass

15  security without proper identification.  Meaux Decl., Exh. D.  In

16  the present lawsuit, Plaintiff claims that the Base Administrator

17  was Eric Edmunson; however, Edmunson was not named in the 1988

18  complaint.  <u>Id.</u>  The 1988 case was resolved pursuant to a

19  confidential settlement agreement.  Although Plaintiff alleges that

20  the agreement provided that he would "not be required to work under

21  Mr. Edmunson's management," First Amended Complaint (FAC) ¶ 14, the

22  agreement contains no such provision.  Goldman Decl., Exh. D.

23      After the lawsuit settled, Plaintiff transferred from

24  Minnesota to Los Angeles and continued to work for Northwest.  In

25  2001, Plaintiff transferred to Northwest's San Francisco operation

26

27      [1]The parties do not define "Base Administrator," but the Court
    assumes it refers to some sort of manager with authority to issue
28  disciplinary measures.

and held the position of purser.  Pursers are experienced flight
attendants who preside over in-flight cabin operations and serve as
a resource to other attendants.  At the time Plaintiff transferred,
Edmunson was Northwest's Operations Manager for San Francisco.
Dena Rasmussen was a flight attendant manager and Plaintiff's
direct supervisor.  Rasmussen reported to Edmunson.  Edmunson and
Rasmussen claim to have no knowledge of the 1988 lawsuit.  Edmunson
Decl. ¶¶ 22-24; Rasmussen Decl. ¶ 18.

On November 1, 2001, Plaintiff's first day of work in San
Francisco, he attempted to pass through security with outdated
identification.  He was allegedly uncooperative during the
screening process and the screeners reported this incident to
Edmunson.  Edmunson Decl. ¶ 8, Exh. D.  Plaintiff alleges that
Edmunson was present and observed Plaintiff's conduct personally
but did nothing to intervene on his behalf.  Meaux Decl. ¶ 8.
Plaintiff states that he did not think that the screeners' alleged
mistreatment had anything to do with his race.  Exh. A at 226-27.
No formal discipline resulted from this event.  However, Plaintiff
was concerned that this incident was the result of Edmunson
inappropriately targeting him in retaliation for the 1988 lawsuit.
On December 1, 2001, Plaintiff wrote a letter to Edmunson and the
Director of Labor Relations stating as much.  Meaux Decl. Exh. E.
Edmunson denies that he ever received the letter.

The events central to this case occurred on August 2, 2003.
On that date, Plaintiff was the purser on a flight from San
Francisco to Japan.  A passenger allegedly acted rudely toward
Plaintiff.  Instead of politely asking for things, the passenger
demanded them from Plaintiff.  For instance, he allegedly said,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  "hang my coat now," and "take this, take this now" referring to his

2  meal tray.  Edmunson Decl., Exh. I at 64-67.  Toward the end of the

3  flight, the passenger told Plaintiff to "get my coat now" and

4  Plaintiff responded by asking, "What's the magic word?"  Id. at 67.

5  Upset with Plaintiff's question, the passenger nonetheless

6  responded, "please," but then told Plaintiff that he would report

7  this incident to Plaintiff's manager.  Id.  Plaintiff asked the

8  passenger for his name and the name of his employer and supervisor.

9  When the passenger refused to provide this information, Plaintiff

10  presented him with a Notice of Violation card.  That card is issued

11  to passengers whose conduct may be in violation of federal law.

12  Flight attendants give these cards to passengers as a warning

13  before notifying federal authorities of a violation.  After

14  receiving the card, the passenger threatened to contact his lawyer.

15  Once the passenger disembarked the aircraft, he spoke with a

16  Northwest gate agent about the incident.

17      On September 1, 2003, Edmunson wrote the passenger a letter of

18  apology.  He stated, "I was very sorry to hear that you were

19  displeased with the service that Purser Orville Meaux provided you,

20  specifically the embarrassment you were subject to.  Please accept

21  my sincere apologies."  Schmidt Decl., Exh. F.   Edmunson then

22  wrote, "While I cannot disclose the details of disciplinary actions

23  taken against the Purser, you can be assured that I am addressing

24  your concerns directly with the crew members."  Id.

25      Rasmussen, Plaintiff's immediate supervisor, investigated the

26  incident.  Before she interviewed Plaintiff, she discussed the

27  situation with Edmunson.  On September 29, 2003, after interviewing

28  Plaintiff, Rasmussen determined that the passenger was not in

4

United States District Court
For the Northern District of California

1  violation of any Federal Aviation Regulation nor was his conduct

2  disruptive according to Northwest guidelines for disruptive

3  behavior.   Northwest defines disruptive behavior as "disorderly

4  conduct, verbal abuse, harassment and irrational behavior."

5  Northwest notes, "Rude behavior is not considered disruptive."

6  Rasmussen Decl., Exhs. C, K.   Rasmussen concluded that Plaintiff

7  erred by issuing the Notice of Violation card and she issued him a

8  "Level I Reminder," the lowest level of formal discipline.   Id.,

9  Exh. K.   Plaintiff was no longer able to serve as a purser.

10      The same day that Plaintiff received the Level I Reminder, he

11  wrote a letter to the passenger's employer.   He stated, "My

12  management required that I explain what and why I did concerning

13  his behavior that took place during that flight on August 2, 2003,

14  also for me to explain why your employee is suing Northwest

15  Airlines."   Edmunson Decl., Exh. I.   He noted that the passenger's

16  "behavior on this flight was very unruly at best, one that I hope

17  is not common to any of your other employees."   He continued,

18  "Because of his behavior, I lost my position as a purser."   Id.   He

19  also wrote that, if the passenger "would repeat this type of

20  behavior on another flight or airline, it might not turn out well

21  for him.   I really don't believe he knows the seriousness of his

22  actions."   Id.   Along with the letter, Plaintiff enclosed an

23  eighteen-page memo, which detailed his version of the August 2

24  incident.   The memo was addressed to Rasmussen and indicated that

25  it was copied to Edmunson and three other Northwest officials.   In

26  actuality, Plaintiff never sent the letter or the memo to any of

27  these individuals.   Although the letter was dated September 29,

28  2003, Plaintiff claims that he sent the letter to the passenger's

**United States District Court**
For the Northern District of California

1  employer on October 23, 2003.  Meaux Decl. ¶ 40.

2      Plaintiff states that, on October 9, 2003, he asked Ms.

3  Rasmussen for a copy of the passenger's complaint.  Rasmussen gave

4  Plaintiff a copy of the complaint and allegedly told him, "You know

5  you have the right, you could write this passenger's employer and

6  let them know of his behavior."  Id. at ¶ 38.  Rasmussen claims

7  that "at no point in time . . . did I tell Mr. Meaux or say words

8  to the effect that he could or should write to the passenger or the

9  passenger's employer with respect to the passenger's conduct during

10  the August 2, 2003 flight."  Rasmussen Decl. ¶ 13.

11      Northwest claims to have no knowledge about the letter until

12  the passenger contacted Northwest in November, 2003.  The passenger

13  complained that he was concerned for his safety and threatened to

14  file a lawsuit.  Plaintiff then gave Northwest a copy of the letter

15  and, on December 7, 2003, Edmunson suspended Plaintiff with pay

16  pending further investigation.  Over the next several weeks,

17  Edmunson investigated the incident further, including holding two

18  question and answer sessions with Plaintiff and his union

19  representative.  Rasmussen did not participate in the investigation

20  or this disciplinary action because she was pregnant.  Rasmussen

21  Decl. ¶ 15.  At the conclusion of the investigation, Edmunson

22  determined that Plaintiff should be fired.  On January, 26, 2004,

23  Northwest sent Plaintiff a letter notifying him that he was being

24  fired for violating several of the Rules of Conduct for Employees

25  of Northwest Airlines, including Rule 1, failing to use good

26  judgment and common sense, and Rule 30, engaging in conduct

27  detrimental to Northwest.

28      Plaintiff grieved his Level I warning and termination to a

**United States District Court**
For the Northern District of California

1   System Board for Adjustments.  The matter was arbitrated by a three

2   member panel, which included a union arbitrator, a company

3   arbitrator and a neutral arbitrator.  The panel conducted a three-

4   day hearing between June 25 and June 27, 2008.  After the hearing,

5   during which Plaintiff presented evidence and cross-examined

6   witnesses, the panel concluded that there was just cause for

7   Plaintiff's Level I discipline and termination.

8                             LEGAL STANDARD

9        Summary judgment is properly granted when no genuine and

10  disputed issues of material fact remain, and when, viewing the

11  evidence most favorably to the non-moving party, the movant is

12  clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

13  56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

14  Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

15  1987).

16       The moving party bears the burden of showing that there is no

17  material factual dispute.  Therefore, the court must regard as true

18  the opposing party's evidence, if supported by affidavits or other

19  evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815

20  F.2d at 1289.  The court must draw all reasonable inferences in

21  favor of the party against whom summary judgment is sought.

22  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

23  587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

24  1551, 1558 (9th Cir. 1991).

25       Material facts which would preclude entry of summary judgment

26  are those which, under applicable substantive law, may affect the

27  outcome of the case.  The substantive law will identify which facts

28  are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

                                   7

**United States District Court**
For the Northern District of California

1  (1986).

2       Where the moving party does not bear the burden of proof on an

3  issue at trial, the moving party may discharge its burden of

4  production by either of two methods:

5       The moving party may produce evidence negating an
        essential element of the nonmoving party's case, or,

6       after suitable discovery, the moving party may show that
        the nonmoving party does not have enough evidence of an

7       essential element of its claim or defense to carry its
        ultimate burden of persuasion at trial.

8
   Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d

9
   1099, 1106 (9th Cir. 2000).

10
        If the moving party discharges its burden by showing an

11
   absence of evidence to support an essential element of a claim or

12
   defense, it is not required to produce evidence showing the absence

13
   of a material fact on such issues, or to support its motion with

14
   evidence negating the non-moving party's claim.  Id.; see also

15
   Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v.

16
   NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the

17
   moving party shows an absence of evidence to support the non-moving

18
   party's case, the burden then shifts to the non-moving party to

19
   produce "specific evidence, through affidavits or admissible

20
   discovery material, to show that the dispute exists."  Bhan, 929

21
   F.2d at 1409.

22
        If the moving party discharges its burden by negating an

23
   essential element of the non-moving party's claim or defense, it

24
   must produce affirmative evidence of such negation.  Nissan, 210

25
   F.3d at 1105.  If the moving party produces such evidence, the

26
   burden then shifts to the non-moving party to produce specific

27
   evidence to show that a dispute of material fact exists.  Id.

28

8

**United States District Court**
For the Northern District of California

1    If the moving party does not meet its initial burden of

2  production by either method, the non-moving party is under no

3  obligation to offer any evidence in support of its opposition.  Id.

4  This is true even though the non-moving party bears the ultimate

5  burden of persuasion at trial.  Id. at 1107.

6                             DISCUSSION

7  I.   Discrimination Claims

8       Defendant moves for summary adjudication of Plaintiff's claims

9  for violation of Title VII of the 1964 Civil Rights Act and

10 California's Fair Employment and Housing Act, on the grounds that

11 Plaintiff (1) offered no evidence suggesting that Defendant acted

12 with a discriminatory motive and (2) failed to rebut Defendant's

13 legitimate, non-discriminatory reasons for disciplining and

14 terminating him.

15      A.   Applicable Law

16      In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973),

17 and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248

18 (1981), the Supreme Court established a burden-shifting framework

19 for evaluating the sufficiency of a plaintiff's evidence in

20 employment discrimination suits.  The same burden-shifting

21 framework is used when analyzing claims under FEHA.  Bradley v.

22 Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996).  Within

23 this framework, plaintiffs may establish a prima facie case of

24 discrimination by reference to circumstantial evidence; to do so,

25 plaintiffs must show that they are members of a protected class;

26 that they were qualified for the position they held or sought; that

27 they were subjected to an adverse employment decision; and that

28 they were replaced by someone who was not a member of the protected

9

United States District Court

For the Northern District of California

1  class or that the circumstances of the decision otherwise raised an

2  inference of discrimination.  St. Mary's Honor Center v. Hicks, 509

3  U.S. 502, 506 (1993) (citing McDonnell Douglas and Burdine).  Once

4  a plaintiff establishes a prima facie case, a presumption of

5  discriminatory intent arises.  Id.  To overcome this presumption,

6  the defendant must come forward with a legitimate, non-

7  discriminatory reason for the employment decision.  Id. at 506-07.

8  If the defendant provides that explanation, the presumption

9  disappears and the plaintiff must satisfy his or her ultimate

10  burden of persuasion that the defendant acted with discriminatory

11  intent.  Id. at 510-11.

12      In order to do so, the plaintiff must produce "specific,

13  substantial evidence of pretext."  Steckl v. Motorola, Inc., 703

14  F.2d 392, 393 (9th Cir. 1983).  To survive summary judgment, the

15  plaintiff must introduce evidence sufficient to raise a genuine

16  issue of material fact as to whether the reason the employer

17  articulated is a pretext for discrimination.  The plaintiff may

18  rely on the same evidence used to establish a prima facie case or

19  put forth additional evidence.  See Coleman v. Quaker Oats Co., 232

20  F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26

21  F.3d 885, 892 (9th Cir. 1994).  "[I]n those cases where the prima

22  facie case consists of no more than the minimum necessary to create

23  a presumption of discrimination under McDonnell Douglas, plaintiff

24  has failed to raise a triable issue of fact."  Wallis, 26 F.3d at

25  890.  "[T]he plaintiff 'must tender a genuine issue of material

26  fact as to pretext in order to avoid summary judgment.'"  Id.

27  (quoting Steckl, 703 F.2d at 393).  To do so, "the plaintiff need

28  produce very little evidence of discriminatory motive to raise a

United States District Court
For the Northern District of California

1  genuine issue of fact."  Lindahl v. Air France, 930 F.2d 1434, 1438

2  (9th Cir. 1991).  "'[S]tray' remarks are insufficient to establish

3  discrimination."  Merrick v. Farmers Ins. Group, 892 F.2d 1434,

4  1438 (9th Cir. 1990).

5       The Ninth Circuit has instructed that district courts must be

6  cautious in granting summary judgment for employers on

7  discrimination claims.  See Lam v. University of Hawai'i, 40 F.3d

8  1551, 1564 (9th Cir. 1994) ("'We require very little evidence to

9  survive summary judgment' in a discrimination case, 'because the

10  ultimate question is one that can only be resolved through a

11  "searching inquiry"-- one that is most appropriately conducted by

12  the factfinder'") (quoting Sischo-Nownejad v. Merced Cmty. Coll.

13  Dist., 934 F.2d 1104, 1111 (9th Cir. 1991)).

14       B.    Analysis

15            1.    Level I Reminder

16       Plaintiff argues that he has shown sufficient circumstantial

17  evidence related to Defendant's decision to issue him a Level I

18  Reminder in response to his conduct on August 2, 2003 to raise an

19  inference of discrimination.  Flight attendants are given

20  considerable discretion when deciding whether to issue a Notice of

21  Violation Card.  While they are not to be issued in response to

22  rude behavior, they may be issued to address verbal abuse and

23  harassment.  The line between rude behavior and verbal abuse and

24  harassment is not a bright one.  Therefore, supervisors must

25  exercise considerable discretion when deciding whether to

26  discipline a flight attendant for improperly issuing a Notice of

27  Violation Card.

28       To support the inference of discrimination, Plaintiff relies

**United States District Court**
For the Northern District of California

1  on two racial comments that Rasmussen allegedly made at some point

2  during "the early 2000s."  Velez Decl., ¶ 7.[2]  One of Plaintiff's

3  co-workers, Jesse Velez, claims that he overheard a conversation

4  between Rasmussen, who is Causasian, and another flight attendant,

5  who is also Caucasian, in which Rasmussen jokingly referred to

6  African Americans as "coons" and "gorillas."  Id. ¶¶ 7-8.  Comments

7  that overtly exhibit hostility to a protected class, even if they

8  are general comments about the class, or are directed to other

9  people, are probative of discriminatory intent.  Dominguez-Curry v.

10  Nevada Transp. Dept., 424 F.3d 1027, 1038 (9th Cir. 2005).  "Where

11  a decisionmaker makes a discriminatory remark against a member of

12  the plaintiff's class, a reasonable factfinder may conclude that

13  discriminatory animus played a role in the challenged decision."

14  Id.  In addition, the person exhibiting discriminatory animus need

15  only be one of the people who participated in, or influenced, the

16  decisionmaking process and the plaintiff need not show that this

17  person communicated his bias to the other decisionmakers.  Id. at

18  1039-40.  Plaintiff's direct evidence of racial animus by his

19  supervisor, who made the decision to issue the Level I Reminder,

20

21  [2]Defendant objects to several of the declarations Plaintiff
submitted to oppose the summary judgment motion.  First, Defendant
objects to Plaintiff's use of the testimony taken during a previous

22  arbitration.  However, these statements were taken under oath and
are admissible under Federal Rule of Civil Procedure 56(e) as

23  affidavits.  See Curnow v. Ridgecrest Police, 952 F.2d 321, 324
(9th Cir. 1991).  Second, Defendant objects to Velez's declaration

24  because it is "vague, speculative and unintelligible."  Reply at 3.
It is not.  Third, the portions of Jones' declaration to which

25  Defendant objects were not relied upon by the Court.  As to the
remainder of Defendant's objections, to the extent that the Court

26  relied upon evidence to which Defendant objected, the objections
are overruled.  The Court did not rely on any inadmissible evidence

27  in reaching its decision.  To the extent the Court did not rely on
evidence to which Defendant objected, the objections are overruled

28  as moot.

**United States District Court**
For the Northern District of California

1  establishes a prima facie case of discrimination in the issuance of

2  that discipline.

3  　　Defendant has submitted sufficient evidence that its decision

4  to issue Plaintiff a Level I Reminder was based on legitimate, non-

5  discriminatory reasons.  Therefore, the burden shifts back to

6  Plaintiff to show that Defendant's proffered reasons for the

7  employment action are a pretext for race discrimination.

8  　　Plaintiff argues that Defendant's investigation of Plaintiff's

9  issuance of the Notice of Violation Card was conducted in bad

10  faith.  Plaintiff points to the fact that Edmunson sent the

11  passenger a letter of apology before Plaintiff's discipline was

12  determined.  However, this letter was a standard customer service

13  apology sent to complaining passengers.  There is no evidence that

14  this letter was related to the decision to issue Plaintiff a Level

15  I reminder.  Further, Rasmussen, not Edmunson, was in charge of the

16  investigation and made the decision to issue the Level I Reminder.

17  Plaintiff has shown that Rasmussen had ample discretion in the

18  discipline process and that there are disputes of fact as to what

19  occurred on the August, 2003 flight and whether Plaintiff's conduct

20  warranted a Level I Reminder.  In conjunction with the direct

21  evidence of racial animus discussed above and, drawing all

22  reasonable inferences in Plaintiff's favor, the Court finds that

23  there is a material issue of fact as to whether Defendant's

24  legitimate reasons for issuing the Level I Reminder were

25  pretextual.  Accordingly, the Court denies Defendant's summary

26  judgment motion on this claim.

27  　　　2. Termination

28  　　Plaintiff argues that he has submitted sufficient

13

**United States District Court**
For the Northern District of California

1  circumstantial evidence related to Defendant's decision to

2  terminate him for writing the passenger's employer a letter after

3  the August 2 incident to raise an inference of discrimination.

4  Plaintiff alleges that Rasmussen told him that he had the right to

5  write to the passenger's employer about the passenger's behavior.

6  Further, Plaintiff presents evidence that, on separate occasions,

7  Rasmussen told other flight attendants to write letters directly to

8  passengers and their employers in response to on-flight incidents.

9  Velez Decl. ¶¶ 5-6; Jones Decl. ¶ 10.  Defendant responds that,

10 even if Rasmussen authorized Plaintiff to write a letter, she did

11 not authorize Plaintiff to write the type of letter that he did,

12 one which contradicted Northwest's findings and insulted and

13 threatened the passenger.  Further, nobody at Northwest read or

14 approved the contents of the letter before Plaintiff sent it to the

15 passenger's employer.  However, making all inferences in favor of

16 the non-moving party, Plaintiff could have reasonably believed that

17 he was entitled to write the passenger's employer to convey his

18 version of the events.

19      To support an inference of discrimination, Plaintiff relies on

20 the same two racial comments that Rasmussen allegedly made and

21 evidence that Rasmussen authorized him to write a letter to the

22 passenger's employer.  However, Rasmussen did not authorize

23 Plaintiff to write the twenty-page threatening letter that he did.

24 Moreover, Rasmussen was not involved in the termination decision.

25      Plaintiff also argues that he was treated differently than a

26 similarly situated Caucasian flight attendant to whom the Court

27 will refer as Doe.  However, Plaintiff's and Doe's conduct are not

28 comparable.  While still onboard an aircraft, Doe wrote a passenger

14

**United States District Court**
For the Northern District of California

1   a half-page note telling the passenger that "as a courtesy to the

2   flight crew in the future it would be appreciated if you would not

3   place your garbage in the aisle and point at it when your flight

4   attendant comes by to pick up garbage. . . .  I am not a walking

5   garbage can."  Schmidt Decl., Rasmussen Dep., Exh. 12.  Doe did not

6   threaten the passenger or write to his employer.  When discussing

7   the incident with his supervisor, Doe acknowledged fault, whereas

8   Plaintiff failed to accept any responsibility for his conduct.

9   Further, the same decisionmaker was not involved in Doe's and

10  Plaintiff's discipline decision.  Rasmussen issued Doe a Level I

11  Reminder, whereas Edmunson terminated Plaintiff.  Therefore,

12  Plaintiff and Doe are not similarly situated for purposes of a

13  disparate treatment discrimination analysis.  In sum, Plaintiff has

14  not presented evidence that the circumstances of his termination

15  raise an inference of discrimination.

16      Even if Plaintiff had established a prima facie case of

17  discrimination, Defendant has submitted sufficient evidence that

18  its decision to terminate Plaintiff was based on legitimate, non-

19  discriminatory reasons; and, for the same reasons that Plaintiff

20  has not proven a prima facie case of discrimination, he has not

21  carried his burden to show that the termination decision was

22  pretextual.  Therefore, the Court grants Defendant's summary

23  judgment motion on this claim.

24  II.  Retaliation Claim

25      Plaintiff alleges that Defendant retaliated against him after

26  he engaged in protected activities, in violation of FEHA.

27  Specifically, Plaintiff alleges that he engaged in the protected

28  activities of filing a claim with the Minnesota Department of Human

**United States District Court**
For the Northern District of California

1   Rights in 1986 and filing a lawsuit in 1988 against Northwest.  He

2   alleges that Defendant was aware of Plaintiff's activities and

3   retaliated against him by issuing the Level I Reminder in

4   September, 2003 and then by terminating him in January, 2004.

5          In order to establish a prima facie claim for retaliation

6   under Title VII and FEHA, a plaintiff must show that (1) he engaged

7   in protected activity, (2) the employer subjected him to an adverse

8   employment decision, and (3) there was a causal link between the

9   protected activity and the employer's action.  Passantino v.

10  Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th

11  Cir. 2000).  Defendant argues that Plaintiff fails to establish the

12  causal link between the protected activities and the adverse

13  action.  The Court agrees.

14         "Causation sufficient to establish the third element of the

15  prima facie case may be inferred from circumstantial evidence, such

16  as the employer's knowledge that the plaintiff engaged in protected

17  activities and the proximity in time between the protected action

18  and the allegedly retaliatory employment decision."  Yartzoff v.

19  Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).  When temporal

20  proximity is the only evidence of causality, the Supreme Court has

21  held that the time between the two events must be "very close," and

22  has cited with approval cases holding that a three-month or

23  four-month period is insufficient alone to establish causation.

24  See Clark Co. School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)

25  (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997)

26  (three-month period insufficient); Hughes v. Derwinski, 967 F.2d

27  1168, 1174-1175 (7th Cir. 1992) (four-month period insufficient)).

28         Here, there is no evidence that Defendant's actions were

United States District Court
For the Northern District of California

1   causally related to Plaintiff's protected activity.  Plaintiff

2   presents no evidence that any decisionmaker in Plaintiff's 2003 and

3   2004 discipline had knowledge of his 1986 Department of Human

4   Rights claim.  Therefore, no cause of action for retaliation can be

5   based on this protected activity.

6           Regarding the 1988 lawsuit, Plaintiff alleges that, in

7   December, 2001, he hand delivered a letter to Edmunson which stated

8   that Plaintiff believed he was being targeted by Edmunson in

9   retaliation for the earlier lawsuit.  Edmunson denies receiving the

10  letter.  Even if Edmunson received the letter, the adverse

11  employment actions taken in 2003 and 2004 are not close enough in

12  time to the 1988 lawsuit or to the 2001 letter to support an

13  inference that the adverse employment actions were causally related

14  to the protected activity.  Therefore, the Court grants Defendant

15  summary judgment on Plaintiff's retaliation claim.

16  III.  Harassment Claim

17          Defendant moves for summary adjudication of Plaintiff's

18  hostile environment claims under FEHA and Title VII on the grounds

19  that Plaintiff cannot demonstrate that the alleged harassment was

20  sufficiently severe or pervasive to alter the conditions of his

21  employment.

22          A.  Applicable Law

23          In order to demonstrate the prima facie elements of a hostile

24  work environment claim, a plaintiff must raise a triable issue of

25  fact as to whether (1) the plaintiff was subjected to verbal or

26  physical conduct because of protected characteristics; (2) the

27  conduct was unwelcome; and (3) the conduct was sufficiently severe

28  or pervasive to alter the conditions of the plaintiff's employment

17

United States District Court
For the Northern District of California

1   and create an abusive working environment.  <u>Manatt v. Bank of</u>

2   <u>America, NA</u>, 339 F.3d 792, 798 (9th Cir. 2003) (citing <u>Kang v. U.</u>

3   <u>Lim Am., Inc.</u>, 296 F.3d 810, 817 (9th Cir. 2002)).  A plaintiff

4   must show that the work environment was abusive from both a

5   subjective and an objective point of view.  <u>Fuller v. City of</u>

6   <u>Oakland</u>, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing <u>Harris v.</u>

7   <u>Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22 (1993)).  In evaluating

8   the objective hostility of a work environment, the factors to be

9   considered include the "frequency of discriminatory conduct; its

10  severity; whether it is physically threatening or humiliating, or a

11  mere offensive utterance; and whether it unreasonably interferes

12  with an employee's work performance."  <u>Nichols v. Azteca Rest.</u>

13  <u>Enters.</u>, 256 F.3d 864, 872 (9th Cir. 2001) (citation omitted).

14      California courts look to federal Title VII decisions in

15  applying FEHA to racial harassment claims.  <u>Etter v. Veriflo</u>, 67

16  Cal. App. 4th 457, 464 (1999).

17      B.  Analysis

18      Plaintiff did not address Defendant's arguments that he has

19  not provided any evidence of his harassment claim.  The Court has

20  reviewed the record and concludes that Defendant's alleged conduct

21  was not sufficiently severe or pervasive to alter the conditions of

22  Plaintiff's employment.  <u>See</u> <u>Manatt</u>, 339 F.3d at 798.  Therefore,

23  the Court grants Defendant's motion for summary adjudication of

24  Plaintiff's harassment claim.

25  IV.  Punitive Damages

26      Defendant argues that Plaintiff is not entitled to punitive

27  damages because of the terms of Northwest's bankruptcy plan.  Under

28  the plan, claims for punitive damages are subordinated claims; and

**United States District Court**
For the Northern District of California

1  the findings of fact in the bankruptcy confirmation order provide

2  that the valuation of Northwest is insufficient to support a

3  distribution to subordinated claims.  Defendant argues that the

4  bankruptcy plan and confirmation order do not allow for any award

5  of punitive damages.  Plaintiff did not respond to this argument.

6      Defendant also argues that Plaintiff has not presented any

7  evidence to meet the standard for an award of punitive damages in

8  this case.  "An award of damages under Title VII is proper where

9  the acts of discrimination giving rise to liability are willful and

10 egregious, or display reckless indifference to the plaintiff's

11 federal rights."  Ngo v. Reno Hilton Resort Corp., 140 F.3d 1299,

12 1304 (9th Cir. 1998).  The Court concludes that Plaintiff has not

13 presented any evidence to support a punitive damages award.

14 Although Plaintiff may proceed to trial on his discrimination claim

15 for the Level I Reminder, the evidence pertaining to that

16 discipline does not rise to the level of willful, egregious or

17 reckless indifference to Plaintiff's federal rights.  Therefore,

18 the Court grants Defendant's motion for summary adjudication that

19 punitive damages are not available.

20                              CONCLUSION

21     For the foregoing reasons, the Court grants Defendant's motion

22 for summary judgment in part and denies it in part.  Docket No. 66.

23 The Court grants Defendant's motion with regard to Plaintiff's

24 retaliation and harassment claims.  The Court denies Defendant's

25 motion with regard to Plaintiff's FEHA and Title VII race

26 discrimination claims relating to his 2003 Level I Reminder, but

27 grants Defendant's motion on those claims relating to his 2004

28 termination.  Further, the Court grants Defendant's motion for

1  summary adjudication that Plaintiff is not entitled to seek

2  punitive damages.

3        IT IS SO ORDERED.

4

5  Dated: 02/18/2010

   _____
6                                    CLAUDIA WILKEN
                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California